WM. McAFFEE, plaintiff in error, *vs.* LITTLEBERRY MUL-KEY, defendant in error.

A suit was instituted to recover damages for a breach of warranty of the soundness of a slave, sold by the defendant to the plaintiff, on the 27th of December, 1862, the consideration of which sale was a house and lot, in the town of Fort Valley:  *Held*, that the Court had jurisdiction to hear and determine such cause of action, upon the state of facts contained in the record.

*Held*, also, that it was not error for the Court below to allow the plaintiff's declaration to be amended so as to charge the defendant with a knowledge of the unsoundness of the slave, at the time of the sale.

*Held*, further, that when the evidence was conflicting as to the soundness of the slave; at the time of the sale, and there was evidence to sustain the verdict, this Court will not, according to its repeated rulings, control the discretion of the Court below, in refusing to grant a new trial, on the ground that the verdict was contrary to the evidence.

Slave Debt.  Deceit.  Relief.  Pleading.  Amendments. Before Judge CLARK.  Lee Superior Court.  March Term, 1869.

In 1863, Mulkey filed his petition against McAffee in which he averred that on the 27th of December, 1862, he

agreed, at McAffee's request, to sell him "the Mulkey house and lot," estimated at $1,000 00, and to take from Mc-Affee, for said premises, a negro woman, Ann, then twenty-four years old, McAffee warranting her sound and healthy; that this trade was consummated on said day, McAffee delivered the slave, with a bill of sale, warranting her sound and healthy, up to that date, adding "but I will not warrant said Ann's health, or soundness, after this date," that "confiding in said promise and understanding" that said negro was then sound and healthy, he conveyed said premises to McAffee; that said negro was then, and long had been, unsound and unhealthy, * sick with a cough, chronic bronchitis, or similar malady; she was worthless, and died of said disease on the 23rd of February, 1863, to his damage, $2,000 00. Though there are no formal words of the action of assumpsit, the prayer ended, "to answer your petitioner assumpsit." The pleas were, 1st, the general issue, 2nd, that the Court could not enforce said claim because it was for a debt, the consideration of which was a slave, and 3rd, that on the 27th of December, 1862, McAffee was worth $42,000 00 and at the surrender of the Confederate armies he was worth but $15,000 00, said loss having been caused "by the emancipation of his slaves, and the destructive and ruinous effects of the war."

Plaintiff's attorneys demurred to said second plea. The demurrer was overruled. Defendant's counsel then moved to dismiss said cause, upon the ground that its averments were insufficient to base a recovery upon. Before the Court had pronounced its judgment upon this motion, plaintiff's counsel amended the petition, by inserting therein, at the point indicated by the * *ante*, that McAffee falsely and fraudulently represented said slave to be sound and healthy, knowing that she was not so, and thereby effected said exchange, to Mulkey's damage, $1,000 00, and filed also another amendment, in no material point different from the other, except that it gave the nature of the disease of which she died, and the facts of the trade somewhat in detail. Defendant's attorneys objected to these amendments upon the ground that

McAffee *vs.* Mulkey.

they made an action for deceit, and that such action could not be joined with assumpsit. The Court allowed the amendments and then overruled the motion to dismiss. The only facts about which there was a contest below were whether said slave died of unsoundness which existed at the time of the trade, and whether defendant knew of said unsoundness and falsely represented her as sound. Upon the first of these points the evidence was as follows: For the plaintiff, he and many other witnesses testified that they knew the slave from the 28th of December, 1862, till said date of her death, that she had on the 2nd, 3rd, and 4th of January, 1863, a very bad cough, expectorated much offensive and bloody matter, and was wholly unable to do any work, and was an expense and trouble to plaintiff till her death. In reply, the defendant, his overseer and overseer's wife, and a negro man, testified that they had known said slave for several years, prior to said trade, that she worked regularly and so far as they knew was sound and healthy. As to the *scienter*, the plaintiff testified that defendant offered to let him have either of three women, that he selected Ann and took a bill of sale, but on the next morning had his suspicions aroused by defendant's offering Ann a pair of shoes, which were then very high, (worth $8 00,) saying that she might take cold and be sick, and by a conversation between McAffee and his wife, of which he could understand nothing, except that she did not wish McAffee to sell Ann to him; defendant was then asked to let him have another of said women and consented, but upon that woman saying she would not go with plaintiff, defendant said, "you see I have done all I can," and plaintiff said no more. It was shown that the physician who attended upon Ann, in her last illness, was dead. Another physician testified that such symptoms, as aforesaid exhibited in January, 1863, showed that she had an abcess of the lungs which must have been some time in forming, that she must have had the disease four or five weeks, perhaps longer, perhaps for years before her death, and that if said symptoms so manifested themselves early in January, 1863, her unsoundness must have been very apparent to any one, long before the 27th of

December, 1862.   Another physician testified that he was defendant's family physician in 1860, 1861, 1862, and perhaps longer, and that between February and July, 1861, he presented a bill to defendant for treating Ann two or three weeks in the summer of 1860, for a complication of inflammation of the womb and pneumonia, and that defendant said he ought not to pay the full amount because his wife said Ann was not sound.   Defendant testified that he did not know Ann was unsound, honestly believed she was sound, and put said words in the bill of sale because he had recently had two of his soundest slaves to die, and then determined never to warrant a slave sound beyond the date of sale, and that he told plaintiff this at the time, as the reason for inserting those words. There was no other evidence as to representations as to Ann's health.

Defendant's attorneys during the trial, offered to show the loss of his property, as pleaded.   The Court held that the "Relief Act" did not apply to this cause and rejected the evidence.

The Court charged the jury :   1st. "This is not an action on the contract to hold McAffee liable on the warranty, but an action of deceit, for and on account of the false and fraudulent representations made by McAffee, at or about the time of the sale.   2nd. If McAffee, at, or about the time of the sale, represented the negro to be sound, and she was not sound at the time of sale, and McAffee knew she was not sound, then he is liable for such false and fraudulent representation, and you will so find.   3d. But if McAffee made such representations in good faith, not knowing that the negro was unsound, he is not bound, and you will so find.   4th. If McAffee fraudulently and recklessly represented said negro to be sound, not knowing whether she was sound or not, with intent to deceive Mulkey, and she was unsound at that time, he is liable.   To falsely and recklessly state a fact to be true, not knowing whether it is true or false, if intended to deceive, is equivalent to a knowledge of falsehood."

The jury found for plaintiff $1,100 00, with costs.   Defendant's attorneys moved for a new trial, upon the grounds

McAffee *vs.* Mulkey.

that the Court erred in allowing said amendments of the petition, in rejecting the evidence of McAffee's loss of property, that the verdict was excessive, unsupported by the law and evidence as to *scienter*, and contrary to the 1st, 2nd and 3rd charges of the Court, and because the 4th charge was hypothetical.

The new trial was refused, and error is assigned on each of said grounds.

VASON & DAVIS, for plaintiff in error.

W. A. HAWKINS, G. W. WARWICK, JAMES J. SCARBOROUGH, by R. H. CLARK, cited as to the jurisdiction of the Court, Worrell vs. Kimbrough, 38th Ga. R.; on the question of amendment, Cobb's N. D., 1135; Judiciary Act, 1799; Irwin's Code, section 3256; Ch. Pl. (4th ed.) marginal page 202, note 2; 11 John's R., 479; 4th Yeates, 109.

WARNER, J.

The Court had jurisdiction to hear and determine the cause of action, as made by the record in this case.

There was no error in the Court below in allowing the plaintiff's declaration to be amended, so as to charge the defendant with a knowledge of the unsoundness of the slave at the time of the sale.

The evidence in regard to the soundness of the slave at the time of sale was conflicting, and according to the repeated rulings of this Court, it will not control the discretion of the Court below, in refusing to grant a new trial, when there is evidence to sustain the verdict.

Let the judgment of the Court below be affirmed.